639 A.2d 478

**Jarvis CRUET, Appellant,**

**v.**

**CERTAIN–TEED CORPORATION, Berisford Taffe and FVT Trucking Company, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1993.

Filed March 24, 1994.

---

Eric G. Marttila, Philadelphia, for appellant.

Joseph H. Riches, Philadelphia, for Certain–Teed, appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

The issue in this appeal is whether the owner of commercial property in New Jersey has a duty to warn motorists on an abutting public highway that vehicles may be entering the public highway from the owner's property. The trial court held that there was no such duty and entered a compulsory nonsuit in favor of the defendant property owner. When the trial court denied a motion to remove the nonsuit, the plaintiff appealed. After careful review, we affirm.

On March 14, 1986, while driving a vehicle northwardly on County Road 720, a public highway in Winslow Township, New Jersey, Jarvis Cruet collided with a truck driven by Berisford Taffe, an employee of FVT Trucking Company, as it entered County Road 720 from property owned by Certain–Teed Corporation. Both Cruet, who sustained serious injuries as a result of the accident, and Taffe were residents of New Jersey and possessed New Jersey licenses. Cruet commenced an action against Certain–Teed in Philadelphia, but the action was transferred to Chester County, where Certain–Teed caused FVT Trucking and Taffe to be joined as additional defendants. Taffe had settled with Cruet prior to commencement of the instant action, but he and FVT Trucking were joined to preserve Certain–Teed's right of contribution in the event Certain–Teed were found liable.

Testimony at trial established that County Road 720 was 25 feet, 3 inches in width, fairly straight, and posted at 50 m.p.h. The highway rose slightly in elevation as one approached the Certain–Teed property from the south. The property adjacent to Certain–Teed on the south was undeveloped and contained a border of pine trees. The driveway into and out of the Certain–Teed property was visible to a vehicle approaching from the south for a distance of at least 450 feet, and a truck, because of its height, would have been visible for a slightly greater distance. From the Certain–Teed driveway, a driver would have had an unobstructed view of approximately 550 feet. At the time of impact, plaintiff's expert said, the truck had traversed 20 feet of the highway, and plaintiff's vehicle was moving at a speed of 18–20 m.p.h. The trial court

held that Certain–Teed had no duty to warn approaching motorists that they were approaching a driveway to a commercial property.[1]

In *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983), the Court explained the circumstances under which a compulsory nonsuit may be entered as follows:

> A judgment of nonsuit can be entered only in clear cases, and a plaintiff must be given the benefit of all evidence favorable to him, together [with] all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Thus an order granting a nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established.
>
> However, it is also well settled that a jury can not be permitted to reach its verdict on the basis of speculation or conjecture; and that a judgment of nonsuit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action. In addition, it is the duty of the trial judge to determine, prior to sending the case to the jury, whether or not the plaintiff has met this burden.

*Id.* at 638–639, 462 A.2d at 682–683 (citations omitted). See also: *McDonald v. Aliquippa Hospital,* 414 Pa.Super. 317, 319–320, 606 A.2d 1218, 1219–1220 (1992); *Thomas v. Duquesne Light Co.,* 376 Pa.Super. 1, 8–9, 545 A.2d 289, 292–293 (1988), *aff'd,* 528 Pa. 113, 595 A.2d 56 (1991).

 Actionable negligence requires "the existence of a duty to act.... arising by reason of the actor's creation of an unreasonable risk of foreseeable harm or one judicially imposed because of policy considerations." *Griesenbeck v. Walker,* 199 N.J.Super. 132, 136, 488 A.2d 1038, 1040 (1985). The question is not merely whether an event is foreseeable; rath-

1. The parties do not dispute that it is the law of New Jersey which is determinative of Certain–Teed's duty, if any, to motorists on the public highway. See: *Troxel v. A.I. duPont Institute,* 431 Pa.Super. 464, 636 A.2d 1179 (1994) for a review of the cases.

er, the question is whether a duty exists to take measures to guard against such an event. *Id.*

Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution.

*Id.* at 137, 488 A.2d at 1041, quoting *Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 583, 186 A.2d 291, 293 (1962).

Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, *Lokar v. Church of the Sacred Heart*, 24 N.J. 549 [133 A.2d 12] (1957). In the field of negligence, duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk"; the essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Prosser on Torts* (2d ed.), § 36.

*Griesenbeck v. Walker, supra* 199 N.J.Super. at 137, 488 A.2d at 1041, quoting *Wytupeck v. Camden*, 25 N.J. 450, 461–462, 136 A.2d 887, 893 (1957).

Section 349 of the Restatement (Second) of Torts is as follows:

A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care

(a) to maintain the highway or way in safe condition for their use, or

(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

This section of the Restatement is a part of the law of New Jersey. See: *MacGrath v. Levin Properties*, 256 N.J.Super. 247, 606 A.2d 1108 (1992). In *MacGrath*, the court held that

the owner of a shopping center had no duty to provide a customer with safe passage across an abutting state highway or to warn of the dangers inherent in traversing the highway. In so doing, the court observed that New Jersey has followed the Restatement rule and that the flow of traffic on the highway and the movement of pedestrians across the highway was subject to control by the state.

*MacGrath* can be distinguished factually from the instant case, and our research has disclosed no decision by the New Jersey appellate courts which is on all fours with the facts of this case.[2] Nevertheless, it seems clear that the courts of New Jersey would follow Section 349 of the Restatement (Second) of Torts; and the courts of other jurisdictions have uniformly applied the Restatement rule to deny recovery under facts similar to those in this case.

In *Dawson v. Ridgley*, 554 So.2d 623 (Fla.Dist.Ct.App.1989), the court held that the owner of a shopping center had no duty to a passing motorist to maintain his property in such a manner that a driver exiting the property had a completely unobstructed view of intersecting traffic. In that case, the plaintiff, a passenger on a motorcycle which had been passing the shopping center on an adjacent highway, had sustained injuries when a vehicle had pulled out of the shopping center exit and collided with the motorcycle. The plaintiff alleged that the owner of the shopping center had negligently con-structed the exit so near a concrete telephone pole located slightly off its property, as to obstruct the vision of drivers

---

2. The decisions relied upon by appellant are not apposite. In *Kolba v. Kusznier*, 252 N.J.Super. 53, 599 A.2d 194 (1991), the court considered the duty of a property owner to maintain shrubbery on his property so as to prevent it from obstructing the vision of motorists on an abutting street. Similarly, in *Weller v. McCormick*, 52 N.J.L. 470, 19 A. 1101 (1890), the court was concerned with the liability of a property owner for injury caused when the dead branch of a tree fell and struck a pedestrian walking along a public road. Finally, the decision in *Warrington v. Bird*, 204 N.J.Super. 611, 499 A.2d 1026 (1985) "is a precedent only that a commercial establishment which provides park-ing facilities for its patrons across a public roadway has a duty to exercise reasonable care for their safe passage from there to the commercial establishment and back." *Ross v. Moore*, 221 N.J.Super. 1, 6, 533 A.2d 398, 401 (1987).

exiting the shopping center. The court concluded that the defendant did not owe a duty to the plaintiff and affirmed the trial court's grant of summary judgment in favor of the defendant.

In *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189 (Tex.Ct.App.1988), the plaintiff had been injured when her car collided with a tractor-trailer which had been exiting from defendant's plant and turning onto an abutting two lane highway. Plaintiff argued that the defendant had negligently designed its facilities so that a tractor-trailer could not turn onto the public highway without blocking both lanes of the highway. The court held the property owner was entitled to summary judgment, saying "a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt." *Id.* at 191–192. With respect to the plaintiff's argument that the landowner had allowed a dangerous condition to exist, the court said:

> In this case, [the landowner] did not discharge onto [the highway] an inanimate, incognizant or inherently dangerous entity. Rather, an independent contractor, hired by the [landowner] to deliver its sheetrock, left [the plant] and was involved in an accident on the highway adjacent.... It is also uncontroverted that once [the truck driver] left [the] property, [the landowner] had no control over him. Generally, a landowner does not have a duty to see that his independent contractor performs his work in a safe manner. Nor is a person bound to anticipate negligent or unlawful conduct on the part of another.

*Id.* at 191 (citations omitted).

In *Snyder Elevators, Inc. v. Baker*, 529 N.E.2d 855 (Ind. App.1988), the defendant landowner operated a grain elevator on his premises. In 1986, the Commodity Credit Corporation designated Snyder as a recipient of forfeited grain. Snyder's parking lot only had space for 25 trucks, which was inadequate

for the 85 or 95 trucks which began to arrive daily. Consequently, trucks would line up along neighboring streets, waiting to unload their grain. When the plaintiff passed through a nearby intersection, he collided with a vehicle operated by Tonya Buck. Plaintiff sued the owner of the grain elevator, contending that its negligence in failing to provide adequate parking had resulted in the parking of trucks in a manner which had obstructed Buck's view of vehicles passing through the intersection. The trial court entered summary judgment in favor of the landowner, and the judgment was affirmed on appeal. The appellate court observed that plaintiff was "a member of the public-at-large, not having with the defendant any of the common relationships traditionally imposing a duty of reasonable care: landowners to invitees, common carriers to passengers, and innkeepers to guests." *Id.* at 858. Although the court agreed that a business owner may owe a duty when the activities conducted on its property create a risk of injury off the premises, it held that such a duty "should be limited to cases in which the defendant has maintained a hazardous condition or conducted some activity on the premises, beyond the mere fact of operating a business, which causes the off-premises injury." *Id.* Therefore, the court concluded that the law did not impose a duty on the business to guard against injury to the general public from negligent acts of a patron over which the business had no control and which caused injury to another off the business property. *Id.* at 859.

Finally, in *Allen v. Mellinger*, 156 Pa.Commw. 113, 625 A.2d 1326 (1993), Elizabeth Allen was injured when she attempted to make a left turn from a highway into the parking lot of a store. As she was making the turn, she collided with a truck coming from the opposite direction. Because Allen was at the crest of a hill when she attempted to turn, her visibility of drivers travelling in the opposite direction was limited. At the location where she stopped to turn, the highway was marked with a broken double yellow center line. Allen brought suit against the owners of the store and parking lot, alleging that they had breached a duty of care by failing to warn her of the dangerous condition and by failing to erect signs indicating

where it was safe to turn into the parking lot. The trial court entered summary judgment in favor of the defendant store owners on the basis that § 349 of the Restatement of Torts absolved them from liability. The Commonwealth Court affirmed the grant of summary judgment on appeal and stated:

Allen has failed [to establish a prima facie case of negligence]. The [property owners] are not liable to Allen because, by her own admission, she collided with the truck in the center of the northbound lane of the highway, located off the [defendants'] property. As Section 349 of the Restatement makes clear, the [defendants], as abutting landowners, owed no duty to Allen, which could be breached, to maintain a public highway in a safe condition.

*Id.* at 118–19, 625 A.2d at 1329. The court also observed that the landowners were not responsible for erecting signs on the highway because this was exclusively the responsibility of the Commonwealth of Pennsylvania. *Id.* See also: *Gelbman v. Second Nat'l Bank of Warren,* 9 Ohio St.3d 77, 458 N.E.2d 1262 (1984). Cf. *Allemand v. Zip's Trucking Co., Inc.,* 552 So.2d 1023 (La.App.1989); *Holiday Rambler Corp. v. Gessinger,* 541 N.E.2d 559 (Ind.App.1989).

In the instant case, the circumstances did not impose upon Certain–Teed a duty to take affirmative measures to prevent harm to the plaintiff from the negligence of third persons as plaintiff passed Certain–Teed's property on a public highway. If appellant's visibility was impaired, it is clear that such impairment had not been caused by a dangerous condition maintained by Certain–Teed on its premises, but by the contours of the highway maintained by public authority, and pine trees growing on the land of an adjoining property owner. The accident occurred on a public highway maintained by governmental authority, where the duty to warn motorists of dangerous conditions rested with the State or local government and not the owners of lands abutting the highway. Because Certain–Teed had no right to control the conduct of the drivers involved in this accident and because it had no duty to control the movement of vehicles on the public highway or warn of dangerous conditions thereon, the trial court

properly entered a compulsory nonsuit in favor of the property owner.[3]

Order affirmed.

**3.** We find no merit in appellant's argument that the trial court abused its discretion by limiting the scope of testimony offered by appellant's accident reconstruction expert.