641 A.2d 295

**Susan MAJESTIC, a minor, by Joyce MAJESTIC and Daniel Majestic, parents and natural guardians and Joyce Majestic and Daniel Majestic, individually, Appellants,**

v.

**The COMMONWEALTH of Pennsylvania, The Pennsylvania Department of Transportation, Township of Upper St. Clair and Upper St. Clair School District, Appellees.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1993.

Decided May 2, 1994.

Nancy D. Fabi, Raymond H. Conaway, Zimmer, Kunz, Loughren, Hart, Lazaroff, Trenor, Banyas & Conaway, P.C., Pittsburgh, for appellants.

Margaret A. McLean, Pittsburgh, for Township of Upper St. Clair.

Frank J. Micale, Senior Deputy Atty. Gen., Brian H. Baxter, Deputy Atty. Gen., Pittsburgh, for the Commonwealth, Pittsburgh.

Gerald J. Hutton, Pittsburgh, for School Dist. of Upper St. Clair.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## ORDER

PER CURIAM.

The appeals involving Appellees, Township of Upper St. Clair, and Upper St. Clair School District, are hereby dismissed as having been improvidently granted.

AND FURTHER, the Order of the Commonwealth Court in the appeal involving Appellee, Commonwealth of Pennsylvania, Department of Transportation, is vacated, and the matter is remanded to the Court of Common Pleas of Allegheny County, Civil Division, for further proceedings consistent with this Court's decision in *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992).

MONTEMURO, J., files a Dissenting Opinion joined by PAPADAKOS, J.

MONTEMURO, J., is Sitting by Designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

MONTEMURO, Justice, dissenting.

I agree with the Majority's disposition in this matter as to the Township and PennDot. However, as to the School District, I dissent.

The Majority concludes that our previous decisions in *Gardner v. Consolidated Rail Corporation* and *Lynch v. National Railroad Passenger Corporation* (consolidated cases), 524 Pa. 445, 573 A.2d 1016 (1990) and *Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122 (1989) are dispositive in finding that the School District in the instant case owed no duty to the Petitioner. After a careful review of these cases, I cannot conclude that they preclude such a duty, and I would hold that the School District owed the Petitioner a duty in the instant case.

The *Gardner*, *Lynch* and *Scarborough* cases all arose from similar factual circumstances. In each case, a minor passed through a hole torn in the fence owned and maintained by a municipality and passed onto land owned by a third party railroad, where the minor was struck by a train and injured. In each case, the injured party sued the municipality in negligence for failing to maintain the torn fence which allowed the minor to enter upon the railroad tracks. We held in each

case that the municipality owed no duty to the injured minor because the fence itself did not injure the minor and because the injury was on the land of a third party produced by voluntary exposure to an obvious hazard over which the municipality had no control. *See Gardner,* 524 Pa. at 455, 573 A.2d at 1021.

The instant case is factually distinguished from the scenario presented in the three cases relied upon by the Majority. This trio of cases involved acts of omissions by municipalities in failing to properly maintain fences surrounding railroad tracks. The present case, involves an act of commission—the negligent design and placement of a gate by the defendant School District.[1] The law of negligence has long recognized a difference between acts of commission or misfeasance and acts of omission or non-feasance. *See Terance Wayne LaFountain v. Webb Industries Corp.,* 951 F.2d 544, 548 (3d Cir.1991); W. Prosser, *Handbook of the Law of Torts* § 56, at 339 (4th ed. 1971); F. Bohlen, *The Moral Duty to Aid Others as a Basis of Tort Liability,* 56 U.Pa.L.Rev. 217, 219 (1908) ("There is no distinction more firmly rooted in the common law and more fundamental than that between misfeasance and non-feasance . . . )

An act of misfeasance is one in which a defendant has created a new risk of harm to the plaintiff. *Prosser, supra* at § 56. An act of non-feasance is one in which a defendant has failed to take positive steps to benefit others or protect them from harm not created by any wrongful act of the defendant. *Bohlen, supra,* at 219. Where a defendant commits an act he owes a duty of care not to create an unreasonable risk of causing an invasion of an interest of another. Restatement (Second) of Torts § 284(a). Where a defendant fails to act he will not owe a duty unless there is a "special relationship" requiring affirmative action found under the law. Restatement (Second) of Torts § 284(b); *Prosser, supra,* at § 56. Under this distinction, tort law has traditionally been slower

1. For the purposes of a demurrer we must assume that the Petitioner's allegations of negligence are correct. *See County of Allegheny v. Commonwealth of Pennsylvania,* 507 Pa. 360, 490 A.2d 402 (1985).

to recognize liability for misfeasance than for non-feasance. L. McCabe, Comment, *Police Officer's Duty to Rescue or Aid: Are They Only Good Samaritan's*, 72 Calif.L.Rev. 661, 661 (1984).

In *Gardner, Lynch* and *Scarborough* we considered whether a municipality had a duty to repair its fences to prevent minors from trespassing and injuring themselves on adjacent train tracks. We held that the municipality owed no duty to the injured plaintiffs. These cases involved municipalities who failed to repair fences and prevent injury of minors caused by third parties. This is properly characterized as non-feasance. Had the School District failed to act in the instant case, I would have no objection to applying the *Gardner* line of cases and finding no duty. For example, had the School District failed to maintain its fences, and had a hole in one of its fences encouraged children to cross a busy road to enter the grounds through that hole, I would find no duty on the part of the School District if a child were hurt crossing the road. However, here, the Petitioner alleges an act of misfeasance-the purposeful design and construction of a dangerous entrance to school grounds without improvements or warning signs. As such, the law of negligence is quicker to recognize a duty in cases such as the instant case than in three cases relied upon by the Majority.

Also, the above-mentioned trio of cases all involve situations in which the injured minor trespassed onto the land of another and exposed himself to danger. The instant case involves an invitee who was legitimately crossing a highway to attend an event held by the defendant School District. In *Gardner, Lynch* and *Scarborough* it would appear to me that we were leary to create a duty on the part of municipalities to maintain fences so as to prevent minors from trespassing on a third party's land and exposing themselves to hazards. The policy supporting our decision in those cases appears to be twofold. First, we recognized that it would be incongruous to create a duty on the part of municipalities to maintain fences where they were not required to erect them in the first place. *See Scarborough,* 523 Pa. at 38, 565 A.2d at 126. Second, it

appears to me that we were concerned with the traditional notion of a lesser duty to a trespasser and the unfairness of creating a duty on the part of a municipality to prevent trespassers from passing onto the property of a third party and injuring themselves. *See Gardner*, 524 Pa. at 455, 573 A.2d at 1021 ("It follows that the city owes no duty of care to persons who crawl through or walk toward holes in city fences bordering city land and are injured on neighboring land by instrumentalities over which the city has no control ..." The instant case does not present any of the concerns that motivated our decisions in *Gardner*, *Lynch* and *Scarborough.* Instead, this case presents a set of concerns uniquely its own.

The concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. *Gardner*, 524 Pa. at 454, 573 A.2d at 1020 (quoting *Sinn v. Burd*, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979)). "There is a duty if the court says there is a duty ... In the decision of whether there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community ..." *Sinn*, 486 Pa. at 164, 404 A.2d at 681 (quoting D. Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 14–15 (1953)).

Though, as discussed *supra*, the creation of a duty is essentially one based upon policy considerations, our law presents us with substantive guidelines. A duty exists where a party could have foreseen the likelihood of harm to the injured person from his act. *McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir.1960); *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A.2d 289 (1951). Duty in any given situation is predicated on the relationship between the parties at the relevant time and necessarily requires some degree of knowledge. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983); *Dumanski v. City of Erie*, 348 Pa. 505, 34 A.2d 508 (1943). Courts have examined a wide array of other consider-

ations in determining whether a duty exists including: the ability of the defendant to adopt practical means of preventing the injury; the cost of avoiding or spreading the risk; the ability of the courts to cope with new litigation; the probability of feigned claims; the ability of the defendant to act in damages; and the burden on the actor and the community. *See* 57 Am.Jur.2d *Negligence* § 87 (1989) (citing *Thompson v. County of Alemeda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980); *Smith v. Denver,* 726 P.2d 1125 (Colo.1986); *Hyde v. Columbia,* 637 S.W.2d 251 (Mo.Ct.App.), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1982); *Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29, 407 N.Y.S.2d 874 (1978), *aff'd* 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979); *Ingle v. Allen,* 71 N.C.App. 20, 321 S.E.2d 588 (1984), *review denied,* 313 N.C. 508, 329 S.E.2d 391 (1985); *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983)).

In the instant case, I have considered the relevant law and have concluded that a finding of a duty in the instant case on the part of the School District is both proper as a matter of law, and beneficial as a matter of policy. The School District could readily foresee that one of the consequences of placing a pedestrian entrance to its facilities without adequate warning signs at a point that would encourage children to cross a busy road would be injury to children. The School District also had knowledge of the design and the danger it presented to children as the entrance was in plain sight in front of the school. This fact, of course, distinguishes the instant case from *Gardner, Lynch,* and *Scarborough* as in those cases it was not established that the municipality had any knowledge that the fences were in disrepair. Also, there is a unique relationship between the School District and the Petitioner in this case as the Petitioner was a student in the District's schools. The School District invited the Petitioner to a scheduled event on it grounds. Petitioner was crossing Route 19 to attend this event when hit by an automobile. This further distinguishes the instant case from the cited trio of cases as here the Petitioner was legitimately on the road while crossing to a parcel of land where she was an invitee.

Upon reviewing other considerations traditionally employed by courts, I believe that, as a matter of public policy, that a finding of duty in the instant case would be socially beneficial and not unduly burdensome on School Districts such as the defendant. Narrowly drawn, I believe that the creation of such a duty in the instant case will do no more than force our school officials to take a second look at their facilities and insure that their entrances are safely designed and placed so as not to imperil the lives of children. At most, School districts may have to reevaluate the design of entrances to their schools and move or replace them where they present a danger to children. At the very least, a duty here would require no more on the part of School Districts than to provide such improvements or warning signs where they have entrances along busy roadways. Installing signs, crosswalks, or flashing lights at entrances to school facilities does not strike me as a burdensome or excessive cost where the safety of children is at stake. Also, I do not anticipate that the creation of such a duty would result in much new litigation as the facts of the case are fairly unique.

Furthermore, the Petitioner contends that Section 364 of the Restatement (Second) of Torts creates a duty on the part of the School District. This also distinguishes the instant case from the *Gardner, Lynch* and *Scarborough* trio. In those cases the asserted claims were based on Sections 323, 365, 343, and 339 of the Restatement (Second) of Torts. We did not consider or interpret Section 364. This Section provides that a "possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of harm, if ... the possessor has created the condition."[2] Comment a to Section

**2.** 364 Creation or Maintenance of Dangerous Artificial Conditions.

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
(a) the possessor has created the condition, or

364 explains that "the rule stated in this Section relates only to structures and other artificial conditions, which, as and when created, involve an unreasonable risk of physical harm to persons outside the land because of their plan, construction, location or otherwise." Here, the location of the entrance created a dangerous condition because it required students to cross Route 19 exposing the injured minor to danger.

We would not be the first court to hold that a dangerous entrance created a duty under Section 364. In *Langen v. Rushton,* 138 Mich.App. 672, 360 N.W.2d 270 (1984), a driver was exiting a shopping center through an entrance/exit designed by the owner of the center. While exiting, the driver hit the plaintiff who was driving south on the road abutting this entrance. In the median strip of the entrance was a tree which obstructed the view of the driver who hit the plaintiff while leaving the center. The plaintiff maintained that the owners of the center negligently planned the entrance by allowing trees to be planted in the median. The owners of the center argued that they owed no duty to the plaintiff that would support a negligence claim. The court found that such a duty existed citing Section 364 and noting that it was entirely foreseeable that a serious accident could occur between an exiting customer and a highway motorist. The court found no requirement that the artificial condition itself must physically cause the injury. It was sufficient that the planning and location of the condition caused the injury, although the injury was physically created by a third party motorist. This is precisely the situation in the instant case.

For these reasons I believe that a duty exists from the School District to the Petitioner in the instant case. I do not believe that the *Gardner, Lynch* and *Scarborough* cases are dispositive of the issue at hand. Instead, I believe that the foreseeability of the harm in this case, the relationship of trust between a school and its students, the beneficial effects of creating a duty on school safety, and the relatively low burden

(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession,....

on school officials to provide safe entrances mandates the finding of a duty in the instant case.

PAPADAKOS, J., joins in this dissenting opinion.